UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JACKSON, | Case No. ED CV 07-1609 PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits. Plaintiff claims that the ALJ erred in 1) failing to consider the fact that the Veterans' Administration ("VA") had determined that he was disabled and had awarded benefits; 2) failing to develop the record regarding the VA award; 3) not providing specific, clear, and convincing reasons for rejecting Plaintiff's pain testimony; 4) failing to consider the side effects of Plaintiff's medications; 5) failing to discuss the state agency reviewing physician's mental assessment findings; 6) determining that Plaintiff could perform the jobs of bench

assembler and order caller; and 7) failing to consider the combined effect of Plaintiff's physical and mental impairments. (Joint Stip. at 3-6, 11-14, 17-19, 23-24.) As explained below, because the Agency's decision that Plaintiff was not disabled is supported by substantial evidence, it is affirmed.

## II. BACKGROUND

On August 10, 2000, Plaintiff applied for SSI, claiming that he had been disabled since December 31, 1988, due to "serious feet problems" and "a mental stress disorder/PTSD."[1] (Administrative Record ("AR") 93-95, 107.) The Agency denied the application initially and on reconsideration. (AR 75-78, 81-84.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 85.) On December 17, 2001, Plaintiff appeared with counsel at the hearing and testified. (AR 23-43.) On January 11, 2002, the ALJ issued a decision denying the application. (AR 9-16.) Following the Appeals Council's denial of review, (AR 5-6), Plaintiff filed an action in this court. The matter was subsequently remanded pursuant to a stipulation of the parties. (AR 403-07.)

On remand, an administrative hearing was held on October 15, 2003 before a different ALJ. (AR 364-98.) On October 30, 2003, the ALJ issued a decision denying Plaintiff's application. (AR 357-63.) The Appeals Council denied review of the decision on December 20, 2004. (AR 349-51.) Plaintiff then filed an action in this court. On March

---

[1] In a previous denial, which was not appealed, the Agency found that Plaintiff was not disabled through December 21, 1999. (AR 54-63.) The Agency correctly notes that this decision is res judicata pursuant to 20 C.F.R. § 416.1457(c)(1). (Joint Stip. at 2 n.1.) Thus, only Plaintiff's alleged disability from August 20, 2000 through December 2004, (AR 599), is at issue in the current matter.

11, 2005, the Court remanded the matter to the Agency again, finding that the ALJ had erred by failing to address an opinion by treating physician Dr. Edward Verde and an opinion contained in an unsigned medical source statement.  (AR 497-505.)

On August 23, 2007, a third administrative hearing was held, at which Plaintiff, through counsel, requested a closed period of disability from August 2000 to December 2004.  (AR 596-601).  On September 19, 2007, the ALJ issued a decision, finding that, despite Plaintiff's various impairments, he was capable of working.  (AR 485-96.)  Thereafter, Plaintiff filed the instant action.

## III. ANALYSIS

### A.   The VA Disability Rating and Award

In his first and second claims of error, Plaintiff contends that, because his counsel informed the ALJ at the third administrative hearing in 2007 that the VA had awarded Plaintiff disability benefits sometime in 2004, the ALJ was obligated to develop the record by obtaining the VA disability determination and discussing the VA's "disability rating," citing *McCartey v. Barnhart*, 298 F.3d 1072 (9th Cir. 2002).  (Joint Stip. at 4-6, 8.)  For the following reasons, the Court finds that there was no error here.

At the third administrative hearing, which took place in August 2007, almost four years after the previous hearing, Plaintiff's counsel informed the ALJ that Plaintiff "[has] been on VA benefits receiving almost $1,100 for the last several years it seems and so there's an ineligibility issue there with the SSI.  And he's already testified in October . . . [2003], so I wasn't really intending to take any testimony here today."  (AR 598.)  The ALJ asked counsel whether that meant that Plaintiff was seeking a closed period of

disability. (AR 598.) Counsel responded, "I was trying to locate the date on his VA award and I don't actually have that. His estimate was that it was sometime around three years ago, which would have put it right around in '04. This application was filed in August of 2000." (AR 599.)

After the ALJ suggested that the closed period be deemed to run from August 20, 2000 to December 2004, he asked counsel if Plaintiff would be testifying at the hearing. (AR 599.) Counsel responded, "No, I think it's too difficult to try to address symptoms specifically in that one period from three years ago. It looks like from the medical records the complaints are all still the same. And we did submit an exhibit of VA records specifically from November of '03 to December of '04 in that period that's at issue." (AR 599-600.) Plaintiff did not testify, and the hearing concluded shortly thereafter.

In his subsequent decision, the ALJ noted that Plaintiff had apparently been found disabled by the VA "sometime in 2004." (AR 486.) The ALJ also discussed the VA records that had been submitted since the prior hearing, noting that "[t]he more recent evidence . . . does not show any material change in [Plaintiff]'s condition, either regarding his feet or his depression." (AR 491.) The ALJ specifically noted evidence that Plaintiff had not been taking medication or doing foot exercises as prescribed, and that, contrary to previous representations by Plaintiff, he was continuing to drink and use drugs. (AR 491-92.)

Plaintiff did not produce any evidence from the VA, either before, during, or after the 2007 hearing, regarding his award of disability benefits or the VA's disability rating. Nor did his

4

counsel apparently feel the need to present evidence detailing the VA's disability determination.

Despite this, Plaintiff now contends that it was the ALJ's obligation to independently obtain the VA evidence. He argues that, even though "[t]he exact date of the award and the nature of the basis for same were not discussed at the hearing[,] [t]he Award itself was not then and is not now in the record[,]" and, for this reason, the record is inadequate. (Joint Stip. at 8.) For the following reasons, the Court disagrees.

It was Plaintiff's job to submit the documentation supporting his claim, not the ALJ's. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Though the ALJ has a duty to fully and fairly develop the record, even when the claimant has counsel, *see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996), that does not mean that a claimant has no obligation. Here, where Plaintiff's counsel informed the ALJ in 2007 for the first time that Plaintiff had been awarded VA benefits "sometime" in 2004, where the ALJ admitted and considered additional records from the VA, and where counsel represented at the hearing that there was nothing further to add with respect to those records, the ALJ met his obligation to develop the record. *See, e.g., Hawkins v. Chater*, 113 F.3d 1162, 1167-1168 (10th Cir. 1997) (stating that, ordinarily, in a case where the claimant is represented by counsel, the ALJ is entitled to rely on counsel to present the case and identify issues which require further development); *Littlejohn v. Astrue*, 2009 WL 700031, at *3 (C.D. Cal. Mar. 13, 2009) (holding that "the ALJ does not have a duty to develop the record with regard to issues that the plaintiff herself never raised.").

1        Nor did the ALJ's decision violate the rule established in
2   *McCartey*, which held that an ALJ "may give less weight to a VA
3   disability rating if he gives persuasive, specific, valid reasons for
4   doing so that are supported by the record."  298 F.3d at 1076.  In
5   *McCartey*, the VA disability rating and the criteria underlying the
6   rating were before the ALJ, but the ALJ inexplicably ignored the
7   evidence.  *Id.* at 1073-75.

8        *McCartey* does not apply to a situation like the one here, where a
9   claimant fails to produce any evidence of the VA disability rating or
10  award, despite having received VA benefits for the previous three
11  years.  The Court further notes that Plaintiff's counsel could have
12  presented evidence of the VA's determination in this proceeding but
13  chose not to.  Because Plaintiff ultimately had the burden of proving
14  disability, *see*, *e.g.*, *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
15  1998) ("At all times the burden is on the claimant to establish his
16  entitlement to disability insurance benefits."), the ALJ's failure to
17  address evidence that was never presented to him is not cause for
18  remand.

19       B.   Plaintiff's Credibility

20       In his third claim of error, Plaintiff contends that the ALJ did
21  not provide specific, clear, and convincing reasons for rejecting his
22  testimony regarding the pain in his feet.  (Joint Stip. at 11-15.)
23  Plaintiff testified at the 2003 hearing that he could not stand "too
24  long," that he could not walk very far, and that even when he was
25  sitting, his feet constantly ached.  (AR 368.)

26       In his 2007 decision, the ALJ found that Plaintiff's impairments
27  could reasonably be expected to produce his alleged symptoms, but
28  found that his statements were "not entirely credible."  (AR 491.)  In

making this finding, the ALJ relied on his prior (2003) decision, which he incorporated by reference, as well as his determinations that more recent evidence had not shown any material change in Plaintiff's condition, that Plaintiff was not complying with medical directives, and that Plaintiff had not been forthcoming regarding his drug use. (AR 486, 491-92.)

ALJ's are tasked with judging the credibility of witnesses. In making a credibility determination, an ALJ may take into account ordinary credibility evaluation techniques. *Smolen*, 80 F.3d at 1284. Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons. *Id*. at 1283-84. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ noted that Plaintiff complained of calluses and heel pain on November 2, 2002, but also said that "he took Motrin only as needed and not as prescribed which was three times a day." (AR 491.) The ALJ also noted that Plaintiff did not take his high blood pressure medication as prescribed; that he was not doing his exercises for foot pain as prescribed; and that he admitted in March 2006 that he had not renewed his prescriptions for high blood pressure and pain. (AR 491.) The ALJ concluded that Plaintiff "generally waits until he is out of pain medication before he seeks treatment for foot pain." (AR 491.)

The ALJ was entitled to use Plaintiff's unexplained failure to take his medications or follow a course of prescribed exercise as a

reason to question his credibility. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Further, his factual findings are supported by the record. A chart note dated February 12, 2004, indicated that Plaintiff "has been without meds for one month." (AR 529.) An August 16, 2005 note sets forth that he had been "off medications for 2 mos" and that he was out of pain medication. (AR 537.) Other notes dated March 29 and November 20, 2006 indicated that he was out of medication. (AR 580, 588.)

The ALJ's finding that Plaintiff's complaints of pain were not fully borne out by the medical evidence is also supported by the record. A physical examination on February 6, 2004, showed "no gait disturbance," while another on January 21, 2005 showed only that Plaintiff's gait was "steady, slow." (AR 529, 538.) Such evidence was also a valid reason for rejecting Plaintiff's testimony. *See, e.g., Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.")

So, too, was the ALJ's observation that Plaintiff exhibited "low motivation to work." (AR 493-94.) The record shows that Plaintiff was invited to three vocational workshops in 2001 and 2002, but did not attend any of them, for unexplained reasons. (AR 478.)

Additionally, the ALJ's finding that Plaintiff was not forthcoming in disclosing his continuing drug use, in the face of contrary medical advice, is also supported by substantial evidence in

the record. In lab tests performed on January 21, 2005, Plaintiff tested positive for cocaine and marijuana (but not for Vicodin). (AR 542.) Plaintiff again tested positive for cocaine and marijuana in October 2005, and subsequently denied using drugs. (AR 537, 538.) In November 2006, however, he reported that he had used cocaine in March 2006. (AR 579.) The ALJ was entitled to rely on Plaintiff's deception to discount his credibility. *Thomas*, 278 F.3d at 959. Because the ALJ's reasons for rejecting Plaintiff's pain testimony were specific, clear, and convincing, this claim does not warrant remand.

C. <u>Medication Side Effects</u>

In his fourth claim of error, Plaintiff contends that the ALJ erred in failing to address the side effects he reported experiencing from Prozac, Sertraline, and Motrin. (Joint Stip. at 18-20.) In various reports filled out in connection with his SSI application, Plaintiff stated that he experienced "forgetfulness" from Prozac and that his medications caused him sleepiness and drowsiness and "limit[ed his] ability to think and act" normally. (AR 112, 125.) Plaintiff testified at the 2003 hearing that he was taken off Effexor because of unspecified side effects.[2] (AR 379.)

The "type, dosage, effectiveness, and side effects" of medication taken by a claimant to treat pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ. 20 C.F.R. § 404.1529(c)(3)(iv); *see also* SSR 96-8p. But a claimant bears the burden of proving that an impairment, including a

---

[2] The record shows, however, that Plaintiff took only one dose of Effexor. (AR 327.)

medication's side effects, is disabling. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (holding that claimant failed to meet burden of proving that an impairment was disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); *see also Thomas*, 278 F.3d at 960 (upholding ALJ's rejection of claimant's statements that her medications affected her concentration and made her dizzy where no objective evidence was put forth and the ALJ properly found her testimony was generally not credible).  Plaintiff has not met his burden in this case.

Where, as here, there is no evidence other than the claimant's testimony of impairment from medication side effects, the ALJ's failure to address such side effects is not error. *See*, *e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding ALJ did not err in excluding alleged side effects from hypothetical question where the record contained only "passing mentions of the side effects of [claimant's] medication ... but there was no evidence of side effects severe enough to interfere with [claimant's] ability to work").  This is particularly true in this case because Plaintiff's claims were discounted by the ALJ.  *See Thomas*, 278 F.3d at 960 (finding no error in excluding side effects where the only evidence was claimant's testimony, and where the ALJ had found the claimant not credible).  For these reasons, the ALJ did not err in failing to discuss the issue.

D. <u>The Stage Agency Reviewing Physician's Findings</u>

In his fifth claim of error, Plaintiff contends that the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinion of state agency reviewing physician R. Forde.

(Joint Stip. at 20-21.)  In a Mental Residual Functional Capacity Assessment form filled out on December 7, 2000, Dr. Forde determined that Plaintiff was "moderately limited" in his ability to understand, remember, and carry out detailed instructions.  (AR 268.)  Plaintiff argues that this finding shows that his mental limitations were "significant" and, therefore, should have been addressed.  (Joint Stip. at 21.)  This argument is rejected.

In his 2007 decision, the ALJ determined, based on the 2003 hearing testimony of medical expert Dr. Rath, that Plaintiff had "mental restrictions limiting him to simple, repetitive tasks with only superficial and intermittent contact with the public."  (AR 489, 491.)  This determination was broadly consistent with Dr. Forde's findings that Plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions and, therefore, the ALJ was not required to offer reasons for rejecting those findings.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (holding that "[c]lear and convincing reasons are not required . . . when there is no conflict" between the ALJ's reasoning and physician's opinion).  In fact, if anything, the ALJ's assessment was more restrictive than Dr. Forde's, who found that Plaintiff was not at all limited in social interaction.  (AR 269.)  Thus, any alleged error in failing to specifically address Dr. Forde's findings was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding ALJ's error is harmless where it is "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

E.  <u>Vocational Expert's Testimony</u>

In his sixth claim of error, Plaintiff contends that the ALJ erred in finding that he could perform the jobs of bench assembler and order caller. (Joint Stip. at 22-24.)  Plaintiff argues that he cannot perform these jobs, as they are described in the Dictionary of Occupational Titles ("DOT"), given the functional limitations found by the ALJ. (Joint Stip. at 23-24.)  This claim is also rejected.

The ALJ found that Plaintiff could perform "a limited range of light exertion," evidently meaning that he could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for up to two hours in an eight-hour workday; and sit without restrictions. (AR 489.)  The ALJ also found that Plaintiff could not operate motorized equipment on the job, work around unprotected machinery, work at unprotected heights, climb ladders, or balance, and determined that he was limited to simple, repetitive tasks with only superficial and intermittent contact with the public. (AR 489.)

These findings were identical to those made in his 2003 decision. (AR 359.)  Presumably, the ALJ relied on the 2003 hearing testimony of a vocational expert, who testified that an individual with these limitations could not perform Plaintiff's past work installing car stereos, but could perform the jobs of bench assembler and order caller. (AR 394-95.)

Plaintiff contends that these two jobs are not consistent with the residual functional capacity set forth by the ALJ. (Joint Stip. at 23.)  Regarding the bench assembly job, Plaintiff notes that, according to the DOT, that work requires the use of "handtools and power tools," such as a pneumatic impact wrench, power press, and pneumatic clinching gun. (Joint Stip. at 24; *see* DICOT 706.684-042,

1991 WL 679055 (Bench Assembler).)  Because Plaintiff was precluded from operating motorized equipment on the job or working around unprotected machinery, he maintains he cannot perform this job. (Joint Stip. at 24.)  The Court agrees with Plaintiff that the ALJ's findings regarding Plaintiff's residual functional capacity would preclude him from performing this job.

The Agency disagrees.  It contends that the vocational expert "testified about a job involving mere assembly and packing of parts, without use of machinery."  (Joint Stip. at 26.)  Thus, in the Agency's view, Plaintiff could perform the job as described by the vocational expert.  This contention is rejected.  The vocational expert's testimony cannot be read as describing the job in that way. The expert testified that bench assemblers "may on occasion though go and pick up parts, [weigh] another carton of parts that they're going to be assembling from a storage.  May or may not, sometimes it's just delivered in a pallet by a forklift or pallet jack."  (AR 397.)  That description does not rule out the possibility that a bench assembler would have to use motorized equipment and, in fact, strongly suggests that such a position would require working in and around machinery.

Nevertheless, any error by the ALJ in this respect was harmless because he properly found that Plaintiff could work as an order caller, a job which the vocational expert testified existed in significant numbers in the economy.[3]  Plaintiff argues that this job

---

[3] Because this job as usually performed would occasionally require standing or lifting beyond Plaintiff's capacity, the vocational expert reduced the number of available order caller jobs by 50%, leaving 500 regionally and 7,500 nationally.  (AR 395-98.)  The Ninth Circuit has suggested that as few as 500 jobs existing locally is a "significant number."  See Barker v. Sec'y, Health & Human

would also be precluded because it requires level-two reasoning, whereas the ALJ found that Plaintiff would be limited to work involving simple, repetitive tasks. (Joint Stip. at 24.) The Court rejects this argument and finds that an individual limited to simple and repetitive or routine tasks is not precluded from work requiring a reasoning level of two. *See, e.g., Hackett v. Burnett*, 395 F.3d 1168, 1176 (10th Cir. 2005) (noting that level-two reasoning appears more consistent with "simple and routine work tasks"); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983-84 (C.D. Cal. 2005) (holding that vocational expert's testimony that claimant restricted to simple and repetitive tasks could perform job requiring level-two reasoning was not inconsistent with the DOT). For these reasons, this claim does not require remand or reversal.

F. <u>Combined Effect of Impairments</u>

Finally, in his seventh claim of error, Plaintiff contends that the ALJ failed to consider the combined effect of his foot condition and mental condition in determining that he did not meet or equal a Listed impairment. (Joint Stip. at 28-30.) Again, the Court disagrees.

Under the regulations, "[m]edical equivalence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" *Marcia v. Sullivan*, 900 F.2d 172, 175-76 (9th Cir. 1990)(quoting 20 C.F.R. § 404.1526). "Equivalence is determined on the basis of a comparison between the symptoms, signs and

---

*Services*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (noting that Eighth Circuit held that 500 jobs constituted "significant number," and that district courts within Ninth Circuit had found that 600 or fewer jobs constitute significant number).

laboratory findings about the claimant's impairment as evidenced by the medical records with the medical criteria shown with the listed impairment." *Id.* (internal quotation marks omitted).  Moreover, a claimant may not simply assert that his condition equals a Listing; rather, he must offer a "theory, plausible or otherwise, as to how" his impairments combine to do so.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (holding ALJ's failure to discuss combined effects of impairments was not error where the claimant failed to offer any theory or evidence as to how his physical and mental disorders combined to equal Listed impairment).  Here, Plaintiff failed to offer any theory in the administrative proceedings or in this court as to how his foot and mental impairments taken together equal a Listed impairment.  Thus, this claim does not warrant remand.  For all of the above reasons, the Agency's decision is affirmed.

IT IS SO ORDERED.

DATED:     June   16  , 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\JACKSON, R 1609\Memo_Opinion.wpd